by deed, and for a valuable consideration, assigned and conveyed to the other plaintiff all his exclusive right to the said invention, with the liberty of making, constructing, using, and vending the same to others to be used, in and throughout the state of Pennsylvania, with a power of attorney for those purposes. That the defendant has, since the date of the said patent, and also of the said assignment within the state of Pennsylvania, constructed, and used ploughs with the improvement so patented, and is still employed in making and using the same. The bill prays an injunction, which was granted at a former session of this court until answer or further order.

The defendant, without having put in an answer, now moved to dissolve the injunction for the following reasons. 1. Because a patent cannot be partially assigned, so as to enable the assignee to bring an action in his own name. Tyler v. Tuel, 6 Cranch [10 U. S.] 324; Whittemore v. Cutter [Case No. 17,600]. 2. Because the bill does not charge the possession of the invention by the plaintiffs. 1 Madd. Ch. Prac. 137. On the other side were cited, Gods. Pat. 169, 177; 2 Madd. 177; 1 Ves. Sr. 476.

C. J. Ingersoll, for defendant.

Mr. Read, for plaintiffs.

---

OGLETHORPE. The (McKENZIE v.). See Case No. 8,857.

O'GRADY (GEORGIA v.). See Case No. 5,352.

---

## Case No. 10,463.

### In re O'HALLORAN.

[8 Ben. 128.] [1]

District Court, S. D. New York. June, 1875.

ATTORNEY—JURISDICTION—PRACTICE.

---

## Case No. 10,464.

### Ex parte O'HARA. [2]

Circuit Court, District of Columbia. Nov. 28, 1860.

PATENTS—REJECTION OF APPLICATION—RETURN OF FEE—RENEWAL—APPEAL.

[1. Under the act of 1836, c. 357, § 7 (5 Stat. 119,) the applicant for a patent, on notice of its rejection by the commissioner of patents, has an election either to withdraw his application and receive back his $20 or to appeal, and on his withdrawal of the application the commissioner's decision becomes final.]

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Not previously reported.]

[2. An affidavit by an applicant that he signed a power of attorney authorizing his attorney to withdraw his application without knowledge of its contents, and that he had no knowledge of its withdrawal, is not sufficient to allow him to renew his application after 10 years from its rejection by the commissioner and its withdrawal by his attorney.]

[Appeal by John O'Hara from the decision of the commissioner of patents refusing to grant him a patent for his improvement in hats.]

MORSELL, Circuit Judge. The appellant describes his claim thus: "What I claim as new, and for which I desire letters patent, is piercing the whole surface of the hat at short intervals with small holes, thereby decreasing its weight and rendering it pervious to the air. I also claim the forming of the sweat leather in the manner described for the purpose specified. And I also claim the introduction of cork between the sweat leather, and the body of the hat." Upon the refusal of the commissioner to grant letters as prayed, O'Hara filed his reason of appeal: "Because the commissioner of patents has not shown any sufficient reasons in law or in fact for refusing to grant this appellant a patent for his said invention as prayed for in his application for the same." The commissioner, in his report in reply, says: "That on May 18, 1848, appellant filed an application for a patent in this office, for alleged improvements in hats, which was rejected February 15, 1849. On June 30, 1850, this application was withdrawn from the office by his regularly authorized attorney. The specification described a hat pierced with small holes at a little distance apart, all over its surface, to ventilate and make the body light, a peculiar mode of forming the sweat-leather; and a mode of introducing strips of cork between the rows of holes in the sweat-leather and attaching them thereto. On June 20, 1860, the appellant renews this application for a patent, for the same invention, which was refused, on the ground of abandonment. The negligence of the appellant has gone too far. He has slept on his invention for nearly ten years; and is brought by his own acquiescence into the condition of presumed abandonment. His position before the office was clearly defined by his honor, Judge Merrick in the case of Wickersham v. Singer [Case No. 17,610], and the reasoning in that case applies in its full force in this." Patent office letter of July 9, 1860, to O'Hara, amongst other things, states: "Without discussing the pertinency of the references given you in rejecting your application in 1849, you are informed that the office must regard your invention as abandoned," &c.

As a foundation for reinstating the case alluded to in the proceedings of the office just recited, the appellant, with his petition and specification, filed an affidavit dated August 14, 1860, the substance of which is: "That, in the year 1848, he filed an application for a patent upon an invention of a ventilating hat. That he employed an attorney in Washington, J. J. Greenough, who filed said case according to said O'Hara's instructions. But he further says at the time he executed the said application in said Greenough's office in Washington, he signed sundry papers, the true import of which he did not understand; one of which papers seems since to have been a power of attorney or writing empowering him to withdraw his said application, which he did not wish withdrawn under any circumstances, until his resources were exhausted in securing his first rights. That, before making up the case and filing the same, he requested said attorney to go and examine the patent office thoroughly to learn whether his invention was patentable, which examination he did perform, in said O'Hara's presence, and reported to him that he was not anticipated and could secure a patent for his said invention, and there was no risk in paying his money, and he left the case with him to prosecute, and removed with his family to the extreme West, within a few months afterwards. That he paid him for his services, which he holds a receipt for at this time. That he wrote him divers letters, but could not hear from him until more than two years had elapsed, at which time he wrote that said case was rejected for want of novelty. At this time he had met with serious misfortunes in business, and was unable to raise funds to fee an attorney to prosecute his said application, and from that time to this, having had a large family to support by daily labor, he had to delay said prosecution; but believed at all times he could prosecute his case whenever he became enabled; not at any time intending to abandon it. When his attorney, Amos Broadnax, of Washington, D. C., took the case in hand in June last, after his investigation of the same, he reported that his (said O'Hara's) application had been withdrawn by the said Greenough, which was without his (said O'Hara's) knowledge or consent." The aforegoing is the case laid before me, according to due notice previously given, and the appellant hath filed his argument in writing by his attorney, and submitted the case.

The object in this case appears to have been in substance to reinstate a case, for the same claim, and on behalf of the same party, tried and determined by the commissioner on the merits, and rejected by him, in the year, 1849, and by the appellant (or his attorney), under the right given to him by the 7th section of the act of 1836, withdrawn, receiving back $20, as therein provided. The grounds on which the application rests are the circumstances stated in the aforegoing affidavit, and the argument is that O'Hara did not abandon his invention to the public—First, because the mere act of withdrawal does not work an abandonment of the invention to the public by operation of law; second, that the mere

loss of time does not; and, third, that neither John O'Hara or the public have done anything, whereby the public have acquired a right to the invention. The question to be considered is whether this method of recourse is open to him. Whether a withdrawal under some particular circumstances would or would not be evidence of abandonment need not be considered, because the present is not such a case. Act 1836, c. 357, § 7, authorizes and makes it the duty of the commissioner of patents, amongst other things, to examine the inventions and proceedings therein directed for the obtaining of a patent, to determine, under the conditions therein mentioned, who of the applicants is or is not entitled to a patent. The latter part of the clause, which is the part bearing particularly on the question now under consideration, provides that if the commissioner thinks the application ought to be rejected because of a double use, or that description is defective and insufficient, "he shall notify the applicant thereof, giving him briefly such information and references as may be useful in judging of the propriety of renewing his application, or of altering his specification to embrace only that part of the invention or discovery which is new. In every such case, if the applicant shall elect to withdraw his application relinquishing his claim to the model, he shall be entitled to receive back twenty dollars, part of the duty required by this act, on filing a notice in writing of such election in the patent office, a copy of which certified by the commissioner shall be a sufficient warrant to the treasurer for paying back to the said applicant the said sum of twenty dollars. But if the applicant in such case shall persist in his claims for a patent with or without any alteration of his specification, he shall be required to make oath or affirmation anew in manner aforesaid. And if the specification and claim shall not have been so modified, as in the opinion of the commissioner shall entitle the applicant to a patent, he may on appeal, and upon request in writing, have the decision of a board of examiners," &c. (since changed to an appeal to either of the judges of the circuit court of the District of Columbia, by the several acts of congress on the subject by which said appeal is provided), "by giving notice thereof to the commissioner, and filing in the patent office, within such time as the commissioner shall appoint, his reasons of appeal," &c. The notice as required was given by the commissioner, with the references on which his decision was founded, that the appellant's invention had been anticipated in the year 1849. At that time O'Hara had an election, given by the statute, either to give notice to the commissioner of his desire to appeal, or to withdraw his application and receive back $20, relinquishing his claim to the model, as before stated. He did the latter, by his attorney, thereby suffering the decision to become final, and so it was suffered to remain until the filing of the application in this case in the year 1860. With respect to the circumstances alleged by him that he signed the power of attorney authorizing the withdrawal of the application, without knowing what it was, however true this may be, it cannot be considered as sufficient, proceeding as it did from carelessness.

How far the other circumstances mentioned in the affidavit might have weight in another tribunal to which the appellant may resort it is not for me to say. I cannot satisfy myself that it can be given here. I have endeavored duly to appreciate the learned argument on behalf of the appellant, and, so far as its principles relate to the original rights of the inventor in the property of his discoveries, they may be just; but when he resorts to the public for protection in the exclusive enjoyment, they become modified, reciprocal rights arise, a valuable consideration must be given, and the very terms and conditions upon which the grant will be made must be complied with, amongst others, is this very right of appeal. I will conclude by quoting the language of Judge McLean, in delivering the opinion of the supreme court in the case of Shaw v. Cooper [7 Pet. (32 U. S.) 292]: "It is undoubtedly just that every discoverer should realize the benefits resulting from his discovery for the period contemplated by law. But these can only be secured by a substantial compliance with every legal requisite. His exclusive right does not rest alone upon his discovery; but also upon the legal sanctions which have been given to it, and the forms of law with which it has been clothed."

For the foregoing reasons, I think the decision of the commissioner is correct, and it is hereby affirmed.